(29 Misc. Rep. 30.)

## CROOK v. PEOPLE'S NAT. BANK OF MALONE.

(Supreme Court, Special Term, St. Lawrence County.   August, 1899.)

BANKRUPTCY—PREFERENCE—AVOIDANCE.

Under Bankruptcy Act 1898, § 60, which provides that a person shall be deemed to have given a preference if, being insolvent, he has made a transfer of any of his property, and the effect of the transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class; and section 60, subd. b, which provides that if a bankrupt shall have given a preference within four months before the filing of a petition, or after the filing of the petition and before the adjudication, and the person receiving it or to be benefited thereby shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person,—a trustee of a bankrupt cannot maintain an action against a bank to recover notes which the insolvent owed it, and which, within four months prior to the adjudication, he procured solvent persons to indorse, by transferring to them property of the value of the face of the notes, which, by reason of the indorsement, were made worth their face, and thus resulted in the bank receiving a greater percentage of its claim than any other creditor in the same class, though the bank had reasonable ground to believe the transaction was for such purpose, as it did not thereby receive any property of the insolvent.

Action by George W. Crook, as trustee in bankruptcy, against the People's National Bank of Malone. Defendant interposed a demurrer to the amended complaint. Demurrer sustained.

W. P. Badger, for plaintiff.

Martin E. McClary and John P. Kellas, for defendant.

RUSSELL, J.   By the demurrer to the amended complaint, which is evidently drawn with careful skill to present from the plaintiff's standpoint of the facts the legal conclusion sought to be reached, it becomes necessary to determine whether the plaintiff, as trustee in bankruptcy, can recover of the defendant bank a promissory note for $12,064.35, made by L. R. Searles and indorsed by Frederick G. Paddock, and another, made by John H. King and indorsed by H. D. Thompson for $3,100, and have the transfer by H. E. King, one of the bankrupts, of such promissory notes, declared to be void, as offending the provisions of the national bankruptcy act of July 1, 1898. The facts, as alleged in the amended complaint, are, briefly, these: H. E. King & Son, of Malone, filed their voluntary petition in bankruptcy on the 17th of February, 1899, then being insolvent, and for six months before then had so been.   On the 4th of March, 1899, the plaintiff was appointed trustee in bankruptcy.   H. E. King individually owned 50 shares of the capital stock of the defendant bank, and 40 shares of the stock of the Malone Water Company; the 90 shares being worth $10,050.   For a long time prior to the 14th of February, 1899, King & Son were indebted to the defendant bank in the sum of $12,064.35 upon notes or acceptances of Searles, indorsed by the firm, and for which they had received the money.   Part of the obligations were past due and part were yet to mature.   On the 14th of February, 1899, H. E. King assigned to Paddock these 90 shares

of stock to secure him for indorsing the note of Searles for the amount last stated. Paddock indorsed the note, and delivered it to King, who on the same day indorsed it with the firm name of H. E. King & Son, and delivered it to the defendant bank for the purpose of securing the indebtedness of King & Son upon the Searles obligation. The value of the promissory note, after indorsement by Paddock, was $12,064.35. Searles had been for a long time insolvent, and unable to pay, and the collection could not be enforced against him. The defendant had full knowledge of the making and indorsing of the note by Paddock and the delivery of the stock as security. The effect of this transfer, the indorsement by Paddock, and the delivery to the defendant, was to enable the defendant to obtain a greater percentage of its debt than any other creditors of the same class, and to obtain a preference over the individual creditors of H. E. King out of his individual property. The defendant had, at the time of the transaction, reasonable cause to believe that the procurement and delivery of the promissory note upon the part of the bankrupts was to give the defendant preference, and such transfer is void under the bankrupt act.

A second cause of action is stated. On the 4th day of February, 1899, King & Son were indebted to the defendant in the sum of $2,625.13 for an overdraft, and $283.63 for accrued interest upon a promissory note theretofore given by the firm. H. E. King was then the owner of a real-estate mortgage for $4,000 and interest, of the value of $4,500, and on that day H. E. King assigned the mortgage to his son, John H. King, and son-in-law, H. D. Thompson, to secure a note of John H. King, indorsed by Thompson, for $3,100, which note was delivered to H. E. King, who delivered the note to the defendant to secure the overdraft and accrued interest. The defendant had full knowledge of the making and indorsing of the promissory note by John H. King and H. D. Thompson and the assignment of the mortgage by H. E. King as security. The effect of the enforcement of the transfer of the mortgage, execution of the note, and delivery to the defendant was to enable the defendant to secure a greater percentage than other creditors of the same class, and to obtain a preference over the individual creditors of H. E. King. Such promissory note is reasonably worth the sum of $3,100. At the time of the transaction the defendant had reasonable cause to believe the transaction and the delivery of the note were for the purpose by the bankrupts to give defendant a preference, and such transfer and delivery of the note is void under the bankrupt act. The plaintiff has demanded the surrender of the Searles and John H. King notes and the value of the bank and water stock and the real-estate mortgage in the alternative, but met with a refusal. This is the substance of the complaint.

The national bankruptcy law is of binding force in every state of this Union. Its provisions must be enforced by the courts of every state, except so far as a limitation has been expressly or impliedly declared by the act itself; and these limitations are mainly as to methods of practice. Hence the supreme court of this state should give its remedial aid if a cause of action has been stated to justify

relief against this defendant. There is no allegation in the complaint of any intent on the part of the bankrupts or the defendant to hinder, delay, or defraud the creditors of these bankrupts. There is no allegation of any combination or conspiracy between the bankrupts, Paddock, John H. King, H. D. Thompson, and the defendant to evade or nullify any of the provisions of the bankrupt act. There is, therefore, no common-law or equitable cause of action stated against this defendant. The right to recover depends entirely upon whether it has violated any of the statutory provisions of the act of congress of the United States which sprang into life on the 1st day of July, 1898. That act destroyed the right of bankrupts, if insolvent, to give preferences, even honestly; which privilege is still enjoyed in this state so far as the law of the state itself governs the transaction. The inquiry then becomes narrowed to the application of the facts alleged to the provisions of the bankruptcy act. By section 3, subd. 2, of the bankrupt act, an act of bankruptcy may consist of a transfer by the bankrupt, if insolvent, of any portion of his property to one or more of his creditors with intent to prefer such creditors over the other creditors. Section 60, subd. a, reads as follows:

"A person shall be deemed to have given a preference if, being insolvent, he has procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class."

Subdivision b of same section is as follows:

"If a bankrupt shall have given a preference within four months before the filing of a petition, or after the filing of the petition and before the adjudication, and the person receiving it, or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person."

It is fair to the plaintiff to assume that both the firm and the individuals composing the firm of King & Son were insolvent and unable to pay either their co-partnership or individual debts in full, so that any arrangement which was made by them within four months of the filing of the petition by which any creditor received any portion of the property with reasonable cause to believe the transfer was for the purpose of a preference by an insolvent, is offensive to the provisions of the bankrupt act, and void at the instance of the trustee in bankruptcy. He succeeds to the bankrupt's right of property, and also to those added powers of grasping all property improperly transferred by the bankrupts, which latter privilege the bankrupts would not have. The counsel for the plaintiff argues that the trustee may waive procedure against Paddock, John H. King, and H. D. Thompson, the sureties, and proceed directly against the bank, which ultimately receives the benefit of the transactions upon the payments of the promissory notes given or indorsed by these solvent parties. This narrows the inquiry to the single question as to the nature of the transactions between the bank and H. E. King. By those transactions, did the defendant bank receive a preference in property of

either of the bankrupts? It is not stated in the amended complaint that the defendant bank had any active participation whatever in the procurement of the indorsement by Paddock or Thompson, or the signing of the note by John H. King. They were simply aware of the manner by which these responsible persons came to give their obligation which the bank received. They were not the instigators or moving agencies by which the transactions were consummated. They were the passive recipients of additional security for doubtful obligations by the signature of solvent parties. As to the Searles indebtedness, at the time of that transaction the bank was the absolute owner of the notes or acceptances as against Searles, the bankrupts, or any person succeeding to their interest, even the plaintiff here. In no sense could these notes or acceptances be deemed assets of the estate of the bankrupt. They were surrendered or superseded, and the same continuing obligation of Searles and the bankrupt was delivered to the defendant, with the added indorsement of Paddock. The effect of that transaction was not to withdraw any property whatever from the assets of the bankrupts, except as it gave life and responsibility to the inchoate liability of Paddock by the consummation of an arrangement which, if unconsummated, would have left his liability unfixed, for the bankrupts could not enforce the indorsement against him, and he therefore had no ripened claim to enforce his security. The bank, however, in receiving the note, did not obtain a transfer of the security itself, and received only the added responsibility of Paddock upon an indebtedness which it owned, and which responsibility was no part of the estate of the bankrupt, and in no manner passed to his trustee. It is only in case of exceptional circumstances—such as the insolvency of the obligor, who is secured by the transfer of property—that the creditor may resort to equity to impress a trust upon the indemnifying securities for his benefit. Vail v. Foster, 4 N. Y. 312. There is no allegation that either Paddock, King, or Thompson is insolvent, and, as against these parties, the bank has no power to demand the securities given to them. Presumptively, those solvent parties will meet their obligations, and it is only by payments to the bank that the securities are enforceable in their hands as against the bankrupts themselves. If the allegations of the complaint had charged the insolvency of the three sureties, the action would have lain only, if at all, to set aside the equitable interest received by the bank, which was the right to enforce those securities as a trust by reason of the insolvency of the sureties themselves.

The cases cited by counsel for plaintiff on this subject only recognize the well-known rule that the transfer of an obligation carries with it the security which the assignor has to secure its payment, the security being an incident to the property value of the obligation itself. Ordinarily, an indemnity security is available only to the person secured. Turk v. Ridge, 41 N. Y. 201; Simson v. Brown, 68 N. Y. 355.

It is conceded that the bankrupts could not repudiate the transaction with the bank. The trustee cannot, unless an invalid preference in the delivery of property has been consummated. He has

no power to take from the bank the evidence of a valid indebtedness against the bankrupt simply because that indebtedness has been secured to the bank now by the added signatures of solvent persons. Dalrymple v. Hillenbrand, 62 N. Y. 5. See, also, Tyler v. Brock, 68 N. Y. 418; Munoz v. Wilson, 111 N. Y. 295, 18 N. E. 855; Winslow v. Bliss, 3 Lans. 220. The national bankrupt act does not intend to interfere with or disturb the orderly business of the country, or prevent courageous struggles of persons straitened for present means to survive financial crises, and regain and maintain business credit, any further than the exigencies of a law, more calculated in respect to the questions here involved to be preventive than remedial, absolutely requires. It is indispensable that credit transactions, which embrace a large volume of the business of this country, should be undisturbed by needless doubt or perplexity, and no extensions of the lines of repressive legislation beyond those of a fair construction will be had to prevent the harmonious routine of daily affairs. Being of the opinion that the facts claimed by the plaintiff to exist do not come within the range of the statute enacted by congress, the demurrer is sustained by the court, with costs, with the privilege of amendment upon their payment.

Demurrer sustained, with costs, with privilege of amendment.